LEMMON, Judge.
Mr. and Mr. Dave Sanderson have sued to recover damages resulting from the wrongful death of their 11-year old child, Patrick, who was killed while walking in the woods by a .22 caliber bullet fired from within a fenced area of pasture and stables adjacent to the woods. Defendants were Vincent Taravella, who leased the land and operated the stables, and the fathers of the three minors who were target shooting with the pistol near the fence which separated the pasture from the woodlands.
The jury, answering special interrogatories, found that the minors’ negligence caused the accident and that although Ta-ravella and Patrick Sanderson’s parents were also negligent, their negligence was not a cause of the accident.[1] The Sander-sons perfected the only appeal, and the principal issue in this court involves Tarav-ella’s liability.[2]
I
Taravella’s operation on the leased 10-acre tract on Barataría Boulevard consisted of approximately 25 stables, which he rented to horse owners for a monthly fee, and an open pasture. This area is shown as Pasture No. 1 on the following sketch, which represents a compilation of several trial exhibits annotated with information established by testimony and photographs:

*16

At the time of the accident in January, 1972 there were numerous homes north of the 16th Street Canal, but the area south of the canal was essentially rural in nature, except for a few residences and business places fronting on Barataría Boulevard. The area behind Pasture No. 1 was generally wooded and overgrown with underbrush for a considerable distance to the east, no clearing or construction having yet begun on the School Board property, and the woods also continued for a considerable distance to the south, up to the point where Lapalco Boulevard was then under construction.
About two or three years before the accident a bridge was built across the deep and 50-foot wide 16th Street Canal, making the woodland area readily accessible to the subdivision residents for walking, exploring, camping, hunting and other recreational uses. At the time of the accident the wooded area was not fenced or generally posted with signs of any kind.
On the morning of the accident a teenager, whose father rented two of Taravel-la’s stables, drove in the company of two other teenagers into Pasture No. 1 to feed his father’s horses. One of the group had a new pistol, and they decided to test it at the rear fence, in an area where a large trash pile (containing junk cars, refrigerators and the like) was located. They took turns fir *17 ing at the trash pile, at two beer cans, and at a bottle which they had hung from a vine. After one shot at the bottle was fired in the direction of the woods, a scream was heard, and the teenagers rushed across the fence and ditch into the woods and underbrush, where they found two young boys, one of whom was on the ground dead from a gunshot wound.
Earlier, Patrick Sanderson and four companions had gone into the woods, as they and their friends in the neighborhood did almost every day. They crossed the bridge and walked along the canal to a point where they separated, Patrick and a companion continuing toward Landry’s Pasture. When Patrick and his friend came upon a “Keep Out” sign, they turned left and followed a trail which led to Lapalco Boulevard. As they walked along the trail, they heard several shots and stopped for a few minutes, but were unable to determine where the shots came from. When they continued on, a single shot rang out, and Patrick fell to the ground at a point later determined to be 116 feet from the point where the teenagers were shooting the pis-
The Sandersons basically contend Tarav-ella was negligent in failing to prevent the shooting of firearms in Pasture No. 1 and in failing to prohibit shooting and trespassing in Pasture No. 3.
Taravella undisputedly had possession and control of Pasture No. 1, from which the fatal shot was fired. While he testified in deposition that he also was lessee of Pasture No. 3 (where Patrick Sanderson was located when shot) at the time of the accident and had fenced and posted the entire area with signs, the trial court allowed him to change that testimony at trial, after the owner had been dismissed from the suit on a summary judgment based on the deposition. However, we need not resolve’ the complex procedural and substantive questions raised by the change in testimony, because this record provides no evi-dentiary basis for imposing liability on Ta-ravella, even if there was no dispute that he was the lessee at the time.[3]
The extent of the duty, if any, of an owner or possessor of land to prevent injury to persons on the premises or on adjacent property, caused by conduct on the subject premises, is determined by the facts and circumstances of each case.
The Sandersons argue that the accident in this case occurred because Taravella knew or should have known shooting of guns frequently occurred in Pasture No. 1, but was seldom there and had no employee there to prevent or to halt the tacitly permitted conduct. While the operator of a business such as a horse stable conceivably has some duty to his renters or to passersby to stop or to curtail known or frequent dangerous and imprudent use of firearms on his premises, this record does not establish Taravella knew or should have known any shooting had ever taken place in Pasture No. 1.
Taravella and Landry, as well as the corporate owner’s property manager and several other witnesses familiar with the neighborhood, testified that they had never seen anyone discharge a firearm in Pasture No. 1. On the one occasion Taravella had seen anyone with a gun (a boy with a small shotgun) on Pasture No. 1, he had chased him off. Moreover, the teenagers admitted they had never fired guns there before. The only suggestion that shooting had ever occurred in Pasture No. 1 was the fact that the investigating officers found 10 to 20 spent shotgun shells of varying ages near the trash pile. However, it is at least equally probable the spent shotgun shells were thrown into the trash pile which was located close to the fence.
While (as the Sandersons point out) perhaps the accident would not have occurred if Taravella or an employee had been on the premises at the time, this record simply does not establish any reason for Taravella *18 to have anticipated that anyone would shoot a gun in the stable and pasture area. Under the circumstances of this case Tarav-ella had no duty to provide round the clock supervision or to take any other steps to protect against dangerous conduct which he had no reason to anticipate.
There was testimony that shooting did occur in the woods behind Pasture No. 1, particularly during hunting season and particularly in the area toward Lapalco Boulevard, which was far away from existing developed areas. Taravella testified that when shooting did occur near the pastures, he chased the shooters away and even called the police on one or two occasions.
As to any duty to prohibit shooting in Pasture No. 3 or in any of the woods behind Pasture No. 1, an owner or possessor of woodlands generally has no duty to people walking or hunting in the woods without permission to prevent injuries resulting from being shot by other people in the woods without permission. Moreover, any failure to keep shooters out of the unfenced woods has no pertinence here, because shooting from unfenced woods was not the cause of this accident. Arguably, there was a cause-in-fact relationship between failing to fence and the injury, in that if Pasture No. 3 had been fenced or posted with signs, Patrick Sanderson probably would not have entered Pasture No. 3, and the accident would not have happened as it did. However, under the circumstances of this case, Taravella had no duty to Patrick Sanderson to fence Pasture No. 3 in order to keep him from being in the place where he was when he was shot by the unanticipated conduct of a person in Pasture No. 1.
The judgment is affirmed.
AFFIRMED.

. The claim against one of the minors was compromised prior to trial, and the judgment rendered by the trial court after the jury verdict reduced the recovery by one-third.

. In oral argument plaintiffs conceded they were not interested in pursuing their assignment of error as to quantum unless this court held Taravella liable. Because we affirm on liability, we do not discuss the quantum of the now. definitive judgment against the pistol shooters.

. Thus, if the jury had found Taravella liable, the judgment based on that verdict would have to be reversed because of absence of supportive evidence.